The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modification.
The undersigned find as facts and conclude as matters of law the following, which were entered into by the parties in the Form 21 Agreement for Compensation, approved by the Commission on March 13, 1992 and at the initial hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employer-employee relationship existed between the parties on January 15, 1992.
2. Defendant is a duly qualified self-insured with Consolidated Risk Management Services as the administering agent on the risk.
3. On January 15, 1992, the plaintiff sustained a compensable injury to her left knee.
4. The plaintiff's average weekly wage was $252.80, which yields a weekly compensation rate of $168.54.
5. The plaintiff received temporary total disability compensation from February 19, 1992 through the date of the initial hearing, and continuing to the time the original Opinion and Award was entered by the Deputy Commissioner.
6. The issues for determination are:
(a) What is the nature and extent of plaintiff's disability?
(b) Should treatment by Dr. Walton Curl be authorized?
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with modifications to Findings of Fact Numbers 8-13, the additional of Finding of Fact Number 19, and some technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a 40 year old, tenth grade educated female who had been employed in September of 1989 as a rough end worker. On January 15, 1992, the plaintiff sustained a compensable injury when she tripped and fell, landing on both knees.
2. After the plaintiff's knees did not improve, she went out of work on February 19, 1992, and she began treatment with orthopaedic surgeon Dr. Stephen G. Fleming on February 26, 1992, for complaints of left knee pain. On March 26, 1992, Dr. Fleming excised a loose body and fibrotic fat pad from plaintiff's left knee. Physical therapy was ordered for the left knee.
3. On March 20, 1992, plaintiff reported to Dr. Fleming that her right knee was fine.
4. On May 11, 1992, the plaintiff was seen by Dr. H. Grey Winfield, III, for a second opinion, at which time Dr. Winfield noted that plaintiff's complaints of left knee pain were not present when she was distracted.
5. Dr. Fleming referred the plaintiff to the Work Recovery Center, where she was seen on June 29, 1992 by Dr. Andrea Stutesman. Dr. Stutesman noted plaintiff had a normal range of motion in both knees and no swelling or discoloration in either knee. Plaintiff voiced subjective complaints of pain only regarding the left knee.
6. The plaintiff refused to cooperate with physical therapists at the Work Recovery Center, leaving early every session. She refused to participate in exercises to strengthen the upper body. The plaintiff was further uncooperative in that she alleged sitting too painful, yet she admitted to sitting at the edge of the pool each evening to cool her legs. She was noted to exhibit an abnormal gait that required her to bend her left knee, and she sat in awkward positions which put greater stress on her left knee. These actions were inconsistent with her subjective complaints of pain.
7. On July 16, 1992, Dr. Fleming noted that plaintiff's complaints of left knee pain were out of proportion to the physical findings. No complaints were made by plaintiff regarding her right knee.
8. Due to plaintiff's continued subjective complaints, both orthopedic surgeon Dr. Alfred Moretz and Dr. Stutesman recommended a lumbar sympathetic block, which plaintiff refused.
9. The plaintiff refused to attend an April 8, 1993 appointment with Dr. Stutesman, and thereafter on April 16, 1993, the Commission ordered the plaintiff to attend a functional capacities evaluation at the Work Recovery Center and to comply with the vocational specialist.
10. The plaintiff attended the functional capacity evaluation but refused to cooperate, rendering the results invalid.
11. On May 24, 1993, Chief Deputy Commissioner Dianne C. Sellers ordered plaintiff to fully cooperate with therapists, due to the noncompliance with the Commission's order of April 16, 1993.
12. On June 8, 1993, the plaintiff was seen by Dr. Stutesman, where complaints of left knee pain were not present when plaintiff was distracted and where plaintiff exhibited an inconsistent range of motion and symptom magnification.
13. On August 10, 1993, the plaintiff began treating with orthopaedic surgeon Dr. Walton Curl. This treatment was not authorized by the defendant and was not authorized by the Industrial Commission except for a one time visit.
14. Dr. Fleming, Dr. Stutesman, and Dr. Curl have opined that plaintiff is capable of performing some range of sedentary work with restrictions, which include a permanent four (4) hour per day restriction, recommended self-pacing, no bending, no stooping, no climbing, and no kneeling. Specifically, her doctor advised against a work-hardening program in his office note of June 7, 1993.
15. Dave Toney, a vocational counselor retained by defendant, attempted to identify work available within plaintiff's restrictions. These jobs included two telemarketing jobs, a movie cinema, Domino's Pizza, Pizza Hut, and McDonald's. The plaintiff was offered a job at Domino's which, according to a worked-up job description, was to be four hours. However, the record is devoid of any convincing evidence as to its actual hours/terms. She failed to follow-up on the interviews for the other jobs.
16. The plaintiff was terminated from Domino's after her first day on February 3, 1994. The undersigned, however, are unable to determine from the record at hand the specific reason for her termination. The only statement present was the hearsay, second hand account through Dave Toney which cannot be accepted as either credible or convincing. Neither plaintiff nor the potential employers at Domino's testified as to what transpired.
17. Randy Adams, a vocational counselor hired by plaintiff, testified that plaintiff would be disadvantaged in competing against non-disabled applicants for work. However, there is no credible or convincing medical evidence in the record to establish that plaintiff is permanently and totally disabled. As Mr. Adams' opinion is based upon the presumption that plaintiff is permanently and totally disabled, his opinions are not accepted as credible or convincing.
18. Dr. Curl has opined that plaintiff has reached maximum medical improvement and that she retains a 20% permanent partial impairment to her left leg. Dr. Curl's rating to plaintiff'sright leg is not accepted as credible or convincing for reasons stated herein above.
19. Plaintiff had not returned to work as of the date of the close of the record in this case with the exception of what may have transpired on one day at Domino's Pizza.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a result of the compensable injury, the plaintiff retains a 20% permanent partial disability to her left leg, for which she is entitled to 40 weeks of compensation should she choose to elect to receive this benefit. N.C.G.S. 97-31(15).
2. The plaintiff bears the burden of proving the existence of her disability and its extent. Tyndall v. Walter KiddeCo., 102 N.C. App. 726, 403 S.E.2d 548, rev. denied, 329 N.C. 505,407 S.E.2d 553 (1991); Russell v. Lowe's Prod. Dist.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. The plaintiff has refused to cooperate with certain approved physicians, physical therapists, and vocational counselors.
4. The plaintiff has failed to prove by competent or convincing evidence that she is unable to work or obtain any employment. All of the medical evidence establishes that plaintiff has exaggerated complaints, has refused treatment, and has refused to cooperate with functional evaluations even after being ordered to comply on two occasions by Chief Deputy Commissioner Sellers.
5. Dr. Curl's treatment did not provide relief, effect a cure, or lessen the period of disability as plaintiff admits that she received no relief, cure, or lessening of disability from his treatment. Furthermore, the plaintiff did not request authorization to seek treatment by Dr. Curl from either the defendant or the Commission. Therefore, the defendant is not liable for this unauthorized treatment beyond the first visit.
6. The plaintiff is entitled to temporary total disability compensation until the end of the healing period. Carpenter v.Industrial Piping Co., 73 N.C. App. 309, 326 S.E.2d 328 (1985). The plaintiff reached maximum medical improvement on January 4, 1993. From January 4, 1993 through May 23, 1993, the plaintiff refused to cooperate with medical providers and vocational counselors. Therefore, she is not entitled to temporary total disability compensation during that period. The plaintiff was only marginally cooperative with vocational expert Dave Toney.
As it appears that plaintiff remained incapable as of the time of the initial decision of earning wages, plaintiff is entitled to continued temporary total disability compensation from May 25, 1993 and continuing until such time as she returns to work within her restrictions or until further order by the Commission. Plaintiff is advised that such lack of cooperation as previously demonstrated will lead to further orders of the Commission to terminate or suspend her workers' compensation benefits.
7. Plaintiff is entitled to such future medical treatment as may reasonably be required to effect a cure, give relief, or lessen her period of disability.
* * * * * * * * * * *
Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation from May 25, 1993, and continuing until such time as plaintiff returns to work within her restrictions or until further order by the Commission. Plaintiff shall cooperate with defendant's vocational rehabilitation efforts. The amounts which have accrued shall be paid in lump sum, subject to the attorney's fee provided for in paragraph three.
2. Defendant shall pay future medical expenses as plaintiff may incur as a result of her compensable injuries, provided such treatment is reasonably necessary to effect a cure, give relief, or lessen her period of disability, when bills for the same have been submitted to the Industrial Commission for approval.
3. A reasonable attorney's fee of 25% is approved from the lump sum of accrued compensation due plaintiff and is authorized to be paid directly to counsel. Thereafter, every fourth check shall be forwarded directly to plaintiff's counsel.
4. Defendant shall pay the costs, including an expert witness fee of $180.00 to Dr. Stutesman and $220.00 to Dr. Curl.
IT IS FURTHER ORDERED that this case be removed from the Full Commission hearing docket.
This is the 5th day of May, 1995.
 S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
DISSENTING _______________ J. RANDOLPH WARD COMMISSIONER
S/ ________________________ COY M. VANCE COMMISSIONER
JHB/nwm 04/27/95